Good morning. May it please the court, Gary Yerman on behalf of petitioner Ms. Lin. Your Honor, a little over nine years ago, this case was before this court, when this court found that the immigration judge improperly conflated the requirements under CAT relief for those for asylum. The case was remanded back to the immigration court with instructions to determine if my client, Ms. Lin, was eligible for protection under CAT, using the proper standards. The court failed to use the proper standards. The BIA uphold the immigration judge's decision, and the case is back before this court. The standards for immigration cannot be conflated with the standards for asylum. The immigration judge started his analysis by discussing the prior negative adverse credibility finding in her asylum claim back in 2003. This court specifically instructed... Well, we upheld that adverse credibility finding, correct? Correct. You did. It was based on lack of corroboration. This court instructed the immigration judge to not conflate the requirements under asylum and to look at the objective evidence to find if my client was eligible under CAT. The objective evidence, if the court had looked at it, would have seen the 2009 country report, which indicates that members of Falun Gong in China are subject to torture in mental institutions where they are forced to undergo electric shock therapy, strapped to beds for days at a time, beaten, and force-fed medications and injections. But on the Falun Gong issue, I thought the problem was that in the prior decision, we basically, in affirming the adverse credibility decision, we basically upheld the determination that she wasn't a real practitioner of Falun Gong. Well, you upheld... Even though that's what she testified, they found her they didn't believe her. Correct. You felt that you upheld the holding that the immigration judge found, that there was not enough corroborating evidence. The issue regarding the Convention Against Torture is separate and distinct from her issue of past persecution based upon asylum. The court, immigration court, must look at the objective evidence to determine, is it more likely than not that somebody will be tortured upon their return to their country? It doesn't even have to be based upon... But the question is whether she was a Falun Gong practitioner. So was there corroborating evidence presented on remand before the IJ? On remand, the immigration judge asked the petitioner, Ms. Lin, questions regarding her Falun Gong practice. She testified that she practiced at home and sometimes in the park. The judge never found her testimony to not be credible. To answer your question, there was no corroborating evidence, but this is a Real ID Act, a pre-Real ID Act case. Therefore, testimony alone is sufficient if found to be credible. Because the immigration judge did not find a negative credibility, then there's a presumption of credibility. So there's a presumption of credibility. She's met her burden to show that she will practice Falun Gong. And the second prong is, is the objective evidence enough to establish that she'll be tortured? I just read from you the 2009 country report. This court has seen many Falun Gong cases. Your Honor, Judge Pregerson, you've decided at least five Falun Gong cases where you've overturned the BIA's holding of adverse credibility. I'm an expert on Falun Gong. So the answer, Your Honor, Judge Nguyen, is that she presented what was reasonable, and that's all that could be expected. She did not have a witness, but this is a mother of two, somebody who testified that she mostly practiced at home, sometimes in the park. And that's enough. She can't create a witness if none is available. So if the judge wanted to really dig deeper, then he should have. But he didn't. She testified that. Do you think this is your strongest argument? Well, I think the strongest argument, Your Honor, is that the country reports viewed objectively show that it's more likely than not that she will be tortured upon return to China for practice of Falun Gong. Okay. We had another argument. You had several other arguments as well. Well, we had other arguments regarding the family planning population control problem issue. Well, as the court has learned probably, in January of this year, China changed the law saying that she's not allowed to have two children, people allowed to have two children. Well, it's uncertain how that will be addressed now. But what is certain is my client, Ms. Lin, did have her third child here in the United States, which would not have ever been permitted if she was sent back to China. She has three now? She does have three. But we're not arguing that issue because it's just unclear how the implementation of the new rule will be put into effect. So what should we do with that? Well, we should put it on hold and allow the case to be sent back, remanded to the IJ, for proper determination on her CAC claim. If subsequent evidence should arise that will allow us to file it. I mean, do with that course of population control issue. What are you asking us to do with that? I'm not asking the court to do anything today, Honor. I think we have to set it aside because there's not enough evidence to argue that the immigration court or the BIA was wrong in holding that it's uncertain what the result of the penalties will be for violating the family planning policy under the new rule. Do you think the new rule, even though it's not part of the record, do you think that we ought to remand because there's a change in the law that we ought to remand so that the BIA and the IJ and she could present evidence to the IJ, what it means? I certainly would encourage the court to do that, yes. But our main argument is to remand back to the IJ to allow him to follow the court decision. So your argument then today, I guess, the best way I can capsulize it, is that although we found her, we upheld the adverse credibility determination in the prior proceeding, in the current remand proceeding there was additional testimony by her. And in this remand hearing, at the end of the hearing, the IJ in her, I don't know if it was the IJ did not find her to be not credible in this remand hearing. Correct. And in this remand hearing she did make some statements that she continues to practice file-and-gone. She continues to practice file-and-gone, and then she will continue if she's sent back to China. That was her testimony. And then when you combine that with the country reports of what year that are in the record? 2009. And it's in? It's in the record. We submitted, the court took administrative record notice of the whole record. We submitted partial, the applicable part of the 2009 country report, which dealt with file-and-gone, not the 300 pages, which deals with every issue. So she now has three United States citizen children? Yes, sir. I was, I'm going to reserve seven minutes. May it please the court, Jeffrey Lee, Superior, on behalf of the Attorney General. Substantial evidence supports the agency's determination that the petitioner failed to demonstrate eligibility for CAT in this case. The file-and-gone issue, a lot of effort was spent in the briefing regarding the credibility finding, there's a 28-J letter filed regarding whether or not the board somehow erred in its treatment of that. The credibility finding remains. But there's no question that the past persecution the petitioner alleged was found to be not credible. So the board here properly found that to the extent the petitioner was relying on that allegation of past persecution, that was already determined to be not credible. So she couldn't essentially piggyback onto that. A lot of the testimony before the IGI remand was essentially trying to rehabilitate her discredited testimony. So what we have here and what the board ultimately finds is that we have uncorroborated evidence of current and potential future file-and-gone practice and the background information. And the board properly found that that was insufficient to demonstrate the petitioner herself would be subject to torture. When you're looking at a CAT claim, it's not sufficient just to say that someone once was tortured or is being tortured. You have to draw that back to yourself. There's no evidence in the record that anybody in China has any interest in the petitioner relating to file-and-gone whatsoever. So the fact that there is evidence in the record in the 2009 country report. Repeat that last paragraph, would you? Which last paragraph? The last one you gave us. I mean, you're talking very fast. Sorry, Your Honor. In order to demonstrate eligibility for CAT, you have to actually show that you yourself will be at risk of being tortured if returned to the country of your origin. Here, the background information is insufficient to show that the petitioner herself will be subject to the torture. There's no evidence in the record that any of you. For being a file-and-gone practitioner. Correct. There's no evidence in the record that China still has any interest in the petitioner if they ever had any interest in the petitioner. There was the adverse credibility finding regarding that still remains. What does the current country report show? Which current? The 2000? No, like today. I'm not sure what the 2000. I guess it would be 14, 15 would be the most recent one. I'm not sure what that says about that, Your Honor. About file-and-gone? Right. It hasn't been submitted. It's not. It wasn't before the board. We can take judicial notice of all that, though. You could, Your Honor. I just simply don't know what the current country report was. I mean, it wasn't something that was before the board. So the board certainly didn't consider that in coming to its conclusion. Regarding the petitioner's cat claim as far as the family practice. Well, look, she has been here now, what, for about at least a dozen years? I believe she came in 2002, Your Honor. And she has two children, an 11-year-old boy and a 9-year-old girl that were born here. Apparently a third. That's news to me, Your Honor. I've got a third. Okay. Three is always a good number. And her sister was sterilized after returning with two children from Japan. I don't believe that's the case, Your Honor. Well, that's what my notes show. There was a cousin who was sterilized in China who had two children in China. There were two other people from Japan. I don't know if they were related to the petitioner. I don't believe that they were. But as the board found, Japan and the United States are not the same country. So the way that they may be treated in China hasn't been shown. But they were both returning, right? I believe so, Your Honor, yes. But the petitioner seems to be arguing or seems to be withdrawing the claim as it pertains to the family planning policies to the extent that there's now a new policy and the petitioner is a third child. I think that would be the case. He did say that a remand would be appropriate in light of the changed conditions. I think that that would be a second or another motion to reopen on that basis. I'm not sure if remanding it would be the most appropriate. It did not. Go ahead. I don't know that because it's a new claim, essentially, that now that the third child is a new policy, I think a motion to reopen would be the proper avenue for that as opposed to remanding it for considering a claim that was never actually brought to the board as such. Go ahead, Your Honor. Well, didn't her sister and a cousin provide affidavits talking about forced sterilization after they returned from Japan with multiple children? The cousin did not. The cousin's children were born in China. As far as the sister, I'll assume that it was the sister. She filed an affidavit about, yes, that the children had been born in Japan, and she was subject to that. But the board found that that doesn't necessarily mean that the petitioner in this case would be similarly situated to those petitioners or to those aliens. So as I read the board's decision, it made a – when it focused on her evidence, it noted that the information that she provided was somewhat unclear about what practices – how the family practice scheme was implemented in her particular locality. Correct. Right? So we have a – after the board's decision in this case, we issued a decision in a case called Zhao. Is that also wrong? I'm familiar with the wrong case. It was Zhao v. Holder. It was a 2007 case. It came up in the context of a motion to reopen. And it dealt with a claim. She wanted to reopen. The petitioner wanted to reopen because she would be returning to China having had children in the United States. And so there's a lot of discussion in that case that all you need, really what's important, is evidence about the – at the province level. And here there is evidence that in her area and at the province level, which – what was this? Her – she was from?  Fuzhoun, yes. That they – if she were to go back with multiple children born in the United States, that there was a very good chance, and then you add the affidavits, you know, that she would be subjected to sterilization, which, you know, why isn't that torture? Well, the evidence that the petitioner submits or cites to in her brief is the 2006 country report. That's the only background evidence that's submitted that's actually discussed in the petitioner's brief. And in a matter of JHS, the board found that the evidence the petitioner submitted in that case, including the 2006 report, didn't show that an alien returning with children from Fuzhoun would be subject to persecution. So it would follow that it also wouldn't be subjected to torture. So our Zhao case comes after the – what's the name of that case? HS? H&S? JHS. JHS was before. Right. And I – when I was reading this, I kind of thought, why – maybe we should send this back in light of our Zhao opinion so that the board could take another look. Well, this court in Fenghui Lin, which actually adopted the handling – or the board's treatment in JHS of that evidence was appropriate. So I think that might post-date the Zhao case that you're referring to. I'm sorry. I think Zhao was a 2013 case. 2013 case. So what does the government want to do? You have this woman. She's here. She's been here for quite a period of time. She has now three children born in this country. So do we want to – has she been convicted of any crimes? I don't believe so, Your Honor. Is she a bad person? Not that I'm aware of, Your Honor. Is she on welfare or anything like that? Not that I know of. She's no burden to us, is she? Not that I'm aware of, Your Honor. No. And she's got three kids. That's an asset for us, right? In terms of? Of brain power in this country, in terms of citizenry. We need more people, don't we? That's what Warren Buffett said. So why would we want to toss her out? We want her to take the kids with her? We want these children to be raised without a mother? Well, Your Honor, the law is the law, Your Honor. The law is the law, but there's flexibility in the law. Well, Your Honor, to the extent that you seem to be discussing prosecutorial discretion, that was something that was broached and that was unable to come to an agreement. What was that? Prosecutorial discretion, Your Honor. Yeah. This case was put in mediation for a while to pursue that. And when was that? I know it was a while back. I believe that the last mediation report was from 2015. But from what I've been able to gather, I wasn't the attorney of record at that time, but that the petitioner decided to go ahead with her case. Well, I mean, I've sent them back for a second time, sometimes a third time, and that works too. Well, Your Honor, I mean, if you believe that there is a legal error in the issue, in the case, then that's one thing. But sending it back to remand for, you know, prosecutorial discretion reasons, I think, is not the appropriate way. Well, Judge Hagerston probably is referring to mediation again, sending it back to mediation. Put it back into mediation. See if there's something that could be worked out here. I mean, that's certainly, I mean, I wouldn't be opposed to putting a case back in mediation. But, again, that depends more on if the petitioner, if that's something that she would be interested in. From what I gather from the previous mediation is that the petitioner's decision, it's herself to take the case out. So if she wishes to pursue that, I would be happy to talk to DHS and see if that is something that is available. But from what I've seen, it wasn't the government's withdrawal of anything. It was the petitioner's decision to pursue the petition for review. Well, you know, these people are desperate, huh? Sometimes they don't have the insights and the lawyers don't have the insights that, you know, might work for them. Again, Your Honor. How could we really imagine taking her and pushing her out of the country after all these years? And she's got three kids who are American citizens. It's their birthright to be here. And what's going to happen with them? As I said, Your Honor, if the petitioner is amenable to putting the case in the mediation to discuss that, I would be happy to discuss that as well. But it wasn't anything that, as far as I can tell, that the government said no or we, you know, weren't inclined to do that. It was that the petitioner wanted to pursue the petition for review, so. Okay. Thank you. Thank you. I just want to clarify something. At the time of the remand, the petitioner, my client, wasn't trying to rehabilitate her prior testimony whatsoever. The judge was asking her questions about it. It was her duty to answer. She was only there to testify about one thing. She's a practitioner of Falun Gong. So when the board and the immigration judge plainly overrelied on the prior adverse credibility finding against my client, they failed to provide a meaningful review of the relevant country conditions and the standards under CAT. And so we asked this court once again to remand to the immigration judge to apply the correct standards. Were you her lawyer at that time? Sorry, Your Honor? Were you her counsel at that time? We were the counsel at the time. We took the case initially at the Federal Circuit back in 2007, and we were counsel at the remand hearing in 2010, yes. You were there? Yes, sir. Once you bring all this up. We did. And the judge didn't have any further questions regarding her Falun Gong practice. He was focusing on the prior adverse credibility, and his demeanor and his questioning led me to believe that he was not going to disregard that and allow her to overcome that past negative credibility finding. But this was not part of the request by the court. It was start from anew and determine whether or not she's practicing Falun Gong now. That was the only issue before the immigration judge. And because he didn't hold a negative credibility finding, it must be presumed she was credible and that she is a practitioner of Falun Gong. And if she is, I'd ask the court to review the country reports both today and from 2009. And you'll see that Chinese government treats Falun Gong members as criminals, as members of cults, and puts them in mental institutions. There's no ambiguity about that. What's your view about mediation? Here's the issue regarding mediation. Why can't something be worked out here? Mediation is appropriate when both sides agree. Were you involved in the other mediation? I was involved in the last mediation where the DHS wouldn't guarantee that prosecutorial discretion would be agreed to. Where in the Second Circuit, they'll do that. They'll just say, well, remand. They call it a Jacobson remand, and they remand it back to the BIA. Maybe the problem is you're in the wrong circuit. No, I enjoy this circuit. And what happened was we were not guaranteed that prosecutorial discretion would be the outcome. We were told, well, we'll ask the oil attorney, we'll speak to DHS, the government attorney, to find out. That's the way the system works. But they wouldn't before we allowed the case to take that route. We need a guarantee that the DHS attorney will give prosecutorial discretion. As someone once said, there are no guarantees here or in the hereafter. Yes, sir. I understand. No process of mediation to see if there's something that you can, where both sides can agree to. I'm happy. Not ahead of time. I'm happy, but that doesn't resolve the issue. And the issue is my client, Ms. Lynn, has a legal right to stay in this country. She deserves, with that legal right, the freedom from the burden of believing that any day she could be removed. We're trying to help you. Don't you understand that? Sir, I know. Okay. And mediation is a nice and acceptable result if the alternative is removal. Oh, come on. But I think the alternative here is remand it back to the IJ. You're running uphill with regard to the Falun Gong argument because of the prior adverse credibility finding and the failure on the last remand to present any corroborating evidence other than her testimony. That's a really tough argument to make. You want to send it back to the same guy that beat you up? He's actually in Texas now. He's actually been sent to Texas. He would go to a different judge in L.A. Oh, I see. But with that said, I will defer to the wisdom of this court. If this court believes that mediation would be the proper avenue, my job is to get the best outcome for my client. And if that's what the court believes, I have no problem with that. Okay. Thank you. Thank you, counsel. Thank you, gentlemen. The matter is submitted at this time. And if we think that mediation is an appropriate procedure, you'll hear from us. Thank you.
judges: Pregerson, Paez, Nguyen